DECISION
This is a civil action which has been submitted to the Court for decision on its merits on an agreed statement of facts, written memoranda, and oral argument of counsel. The plaintiff requests that this Court issue a writ of mandamus commanding the defendants to issue a certificate of municipal liens pursuant toG.L. § 44-7-11, which does not contain a claim of a municipal lien for unpaid taxes for 1991, assessed on certain real estate on December 31, 1990. The plaintiff further requests that the Court declare that the defendants do not have a valid lien on said real estate pursuant to G.L. § 44-9-1, and that the defendants may not re-apply payments credited for real estate taxes after 1991 to the 1991 tax indebtedness. The defendants claim that they have a valid and enforceable lien on the real estate for unpaid municipal taxes assessed and levied on December 31, 1990 for 1991, and ask for judgment declaring the validity of their tax lien.
Needless to say, the agreed facts demonstrate a convoluted tax and title history for the real estate in question. On December 31, 1990, title to the real estate located at 321 South Main Street, known to the tax assessor as lot 33 on plat 16, was held by 321 South Main Street Limited Partnership, called the "Prior Owner." The Prior Owner's title was subject to a mortgage deed to the plaintiff dated June 5, 1985.
On May 26, 1992, the Prior Owner filed a petition under Chapter 11 of the United States Bankruptcy Code. The filing stayed a tax sale of the real estate scheduled to be held on August 6, 1992. The Bankruptcy Court confirmed a reorganization plan for the Prior Owner on April 19, 1993. Under that plan the "secured claim of the City for tax arrearages for the period of July 1, 1991 through June 20, 1992," the taxes for which the defendants now assert they have a lien, were to be paid in installments, the final of which was to be paid on October 1, 1995. The debtor was to pay "all taxes accrued and payable" on and after June 30, 1992 on a timely quarterly basis. A municipal lien certificate issued thereafter on March 13, 1995 showed a balance due of $36,064.71 and interest of $16,154.11 on the 1991 taxes. A bill from the collector dated May 3, 1995 showed that the Prior Owner still owed $35,964.71 under the confirmed plan of reorganization for the 1991 taxes.
On March 15, 1995, the plaintiff gave notice to the Prior Owner that it was in default of the terms of the note secured by its mortgage and that it intended to foreclose the mortgage by the exercise of its power of sale on April 27, 1995. Notice of the intended foreclosure was also transmitted to the defendants. At the sale on April 27, 1995 title was conveyed to the plaintiff by foreclosure deed.
On October 21, 1996, at the request of the plaintiff, the defendant issued a municipal lien certificate claiming a lien for unpaid 1991 taxes in the amount of $35,964.71 plus interest of $23,017.41. The certificate was recorded on November 6, 1996. The collector declined to issue a certificate without the claim of a lien for the unpaid balance of 1991 tax and interest. Also, on November 6, 1996 the defendants asserted that, since the Prior Owner had failed to pay its tax obligations as required by the terms of its approved plan of reorganization in bankruptcy, it would reactivate its claim for tax obligations accrued prior to the bankruptcy filings. It intended to apply payments received in 1993, 1994, and 1996 to the oldest outstanding tax claims at the time of filing as well as to interest waived at the time of approval of the plan. The result of such a re-application of these payments would leave the 1994 and 1995 taxes, plus interest, unpaid, and subject to immediate lien foreclosure.
Under the statutes of this State, taxes on real estate become a lien on the real estate superior to all other liens on December 31 of the year before the year in which they are levied. G.L.§§ 44-5-1 and 44-9-1 (a). The issue in this case is not when the lien for the 1991 tax arose. The issue is whether or not it has been terminated. The plaintiffs refer to the termination provision of § 44-9-1 (b): "The lien shall terminate at the expiration of three years thereafter if the estate has in the meantime been alienated and the instrument alienating the estate has been recorded; otherwise, it shall continue until a recorded alienation of the estate." The foreclosure deed is an alienation of the estate. Rathbun v. Allen, 63 R.I. 109, 114-15 (R.I. 1939). The foreclosure deed was recorded on April 28, 1995. More than three years had elapsed on that date since December 31, 1990. The lien, argues the plaintiff, has thereby been terminated by operation of law.
The defendant argues that the "three years thereafter" proviso in § 44-9-1 was tolled during the pendency of the bankruptcy proceeding after May 26, 1992. The tax sale of this property was stayed, they say, by virtue of the provisions of§ 362 of the Bankruptcy Act. (11 U.S.C. § 362). Although this property became free and clear of liens and the stay was terminated upon approval of the plan of reorganization on April 19, 1993 under § 1141 (c) of the Bankruptcy Act, the plaintiff was permitted by the plan to reinstate its remedies under an amended note and mortgage "in accordance with the provisions of applicable non-bankruptcy law, . . ." The amendment to the mortgage and security agreement approved by the plan, according to the defendants, nevertheless continued to enjoy the same priority as the mortgage had prior to the amendment, i.e. subject to the defendant's tax lien.
The City, unlike the plaintiff, however, did not include a provision for the restoration and reinstatement of its lien in the event the debtor in the reorganization defaulted on its obligations under the plan. The City's unpreserved lien therefore terminated on the recording of the alienation in 1995, since more than three years had elapsed since December 31, 1990, and any tolling by the stay had been terminated on April 19, 1993, when the stay was terminated.
The defendant argues, also, that this issue is within the exclusive jurisdiction of the United States Bankruptcy Court because it deals with the property of a debtor whose property was subject to the jurisdiction of that Court. It points out that the Bankruptcy Court retained jurisdiction over "all controversies regarding the validity, extent and enforceability of any lien" and "all claims with respect to a security or ownership interest in any property of the debtor or any proceeds thereof." The plaintiff points out that the bankruptcy case was formerly closed on August 5, 1993. This Court concludes that the retention of jurisdiction by the Bankruptcy Court under the plan has long since come to an end.
Furthermore, § 44-9-1 (b) does not expressly provide for any tolling or suspension of its provisions by virtue of a stay of enforcement of the lien by bankruptcy proceedings. According to its plain language the lien terminated on April 28, 1995 when the foreclosure deed was recorded. This Court cannot construe a statute in defiance of its plain and unambiguous language. Nothing in the statute itself implies that the period within which the lien may be enforced is tolled. The Court is satisfied that the lien terminated on April 28, 1995. Accordingly, the municipal tax lien certificate issued thereafter showing a lien for taxes assessed on December 31, 1990 for levy during 1991 was erroneous. The tax collector has no discretion to include a terminated lien in the certificate which must be issued under § 44-7-11.
A writ of mandamus will issue commanding the collector to issue a certificate without any claim of lien for taxes assessed for 1991.
A judgment may be entered declaring that the lien established by § 44-9-1 for 1991 taxes terminated on April 28, 1995.
The tax collector will be enjoined from applying receipts from the bankrupt debtor in any fashion other than as may have been permitted by the plan affirmed by the Bankruptcy Court.
The plaintiff will present a form of writ for issuance and judgment for entry on reasonable notice to the defendant.